Pahlman, Ex'r, etc., et al. *v.* Graves.

JOHN D. PAHLMAN, Executor, etc., *et al.,* Appellants, *v.* RILEY M. GRAVES, Appellee.

APPEAL FROM COOK.

In equity, the assets of a deceased and of insolvent partners, if there be partnership and separate property, will be distributed by paying the firm debts out of the proceeds of the joint estate, and the individual debts out of the separate estate. The joint and individual debts should be kept distinct, and the assets of the two estates marshaled accordingly. Joint creditors must first resort to the joint fund, and the creditors of the individual partners to their separate property; upon the inadequacy of either of these, then the joint or separate estate may be applied, according to the exigency of the case. If there is no joint fund, nor any solvent partner, joint creditors may participate equally with a private creditor in the estate of a deceased partner. Should there be a surplus of the joint fund, the creditor of an individual partner may resort to that.

A creditor of a copartnership which had assigned for the benefit of creditors, after the death of one of the firm, took a judgment against the survivors, and execution thereon having been returned unsatisfied, filed his claim for probate against the separate estate of the deceased partner, which was allowed. Held, that the claim of the creditor was provided for in the assignment, and that he must proceed against the joint before he can resort to the separate estate, and if he desires an equitable adjustment of the joint and separate claims, he must make the assignee a party to the proceeding. A return of *nulla bona* to the execution, would not relieve him from this duty.

Where a copartnership fund is liable, the creditor of that fund should proceed in equity against those controlling it, and subject that fund to his payment, before he resorts to the separate property of the copartners.

The County Court has not equitable jurisdiction where third parties are to be brought in, and copartnership, or other complicated and conflicting interests are to be adjusted. The cases in 19th Ill. R., p. 349, and 21st Ill. R., p. 204, qualified and explained.

THE facts of this case are stated in the opinion of Mr. Justice BREESE.

RUCKER & PAGE, for Appellants.

S. B. PERRY, for Appellee.

BREESE, J. The facts proved and admitted in this case are as follows: On the sixth of April, 1857, Asher Rossiter, since deceased, John D. Pahlman, George C. Smith, and John E. Smith, were copartners in business, under the firm name of Rossiter, Pahlman & Smiths. As such partners, on that day, they executed and delivered, for value received, to Riley M. Graves, the plaintiff and appellee, their two promissory notes of that date, whereby the firm promised to pay to the order of Graves, six months after the date thereof, at the Marine Bank, Chicago, the sum of two hundred fifty-five and 38-100 dollars; and by the other note, nine months after its date, at the same bank, two hundred and fifty-five and 37-100 dollars. On the

fifth day of October following, the firm of Rossiter, Pahlman & Smiths, made a general assignment for the benefit of creditors, constituting Francis A. McIntyre assignee—that the assignee had not, at the time of these proceedings in court, closed up the business of this trust, and had then in his hands the assets so assigned to him, which, however, are insufficient to pay the liabilities of the firm. Rossiter died on the 25th of February, 1858. On the third of March, 1859, Graves commenced suit in the Circuit Court of Cook county, against Pahlman and the Smiths, as surviving partners, on these notes, and on the 13th of April following, obtained a judgment against them, as surviving partners, for five hundred and fifty-three and 37-100 dollars and costs of suit, and on the 14th of April he caused execution to be issued on the judgment, and placed it in the hands of the sheriff of Cook county for collection. The sheriff demanded of the defendants in the execution the payment thereof, or the surrender of property in satisfaction. The defendants declined to pay it, and said they had no property to surrender in satisfaction. The sheriff, being unable to find property, returned the execution to the clerk's office, on the 12th of July, 1859, in no part satisfied.

On the 19th of September following, Graves filed his claim upon these notes in the County Court of Cook county, for allowance, against the estate of Rossiter, deceased, and on the 19th of October, due notice thereof having been given to Pahlman, the sole executor under the will of Rossiter, the judge of the said court, in accordance with the practice of that court upon claims of this nature, and presented under these facts, allowed the claim against Rossiter's estate to be paid, as follows: "class number four," Riley M. Graves, two notes, and interest, $568.70. From this order the executor appealed to the Circuit Court of Cook county. The estate of Rossiter had been represented to the County Court by the executor as insolvent, and it was so entered for record in the County Court, and that claims of Rossiter's individual creditors, to a large amount, had been proved against his estate.

The Circuit Court, upon these facts, found for Graves, and assessed the damages at six hundred and eleven and 50-100 dollars, and entered judgment therefor, to which finding and judgment, Pahlman, the executor, excepted, and appealed to this court, and assigns for error the assumption and exercise of jurisdiction by the County Court in the cause, when, by law, it had no jurisdiction; in rendering a judgment for Graves, when by the law of the land it should have been rendered in favor of the executor; and because the court declined to dismiss the proceedings, as by law it should have done.

We remark here, there is no motion in the record to dismiss the proceedings, in either court.

The argument in this court has been principally directed to the question of jurisdiction in the County Court; the appellant contending, that before Graves could go upon the individual estate of Rossiter, he was bound, his debt being a joint debt of the partnership, first to proceed against and exhaust the joint fund. That the separate estate of Rossiter is for the benefit of his separate creditors, the joint creditors having no claim upon it, except for such residuum as may remain after the separate creditors have been satisfied. This court, in *Ladd* v. *Griswold et al.*, 4 Gilman, 36, say, that at law the individual debts of one partner, and the partnership debts, are placed on the same footing, and are to be paid, *pari passu*, out of the assets. The general rule by which courts of equity are governed, in the administration of the assets of deceased and insolvent partners, is, if there be partnership property, and also separate property of a partner, the partnership debts are to be paid out of the proceeds of the joint estate, and the individual debts are to be paid out of the proceeds of the separate estate. The joint and individual debts are to be kept distinct, and the assets derived from the two estates are to be marshaled accordingly. The joint creditors have no claim on the fund arising from the separate estate, until the individual debts are satisfied; and on the other hand, the separate creditors can only seek payment out of the surplus of the partnership effects, after the satisfaction of the joint liabilities. Such is unquestionably the rule in equity, where there is a joint and a separate estate to be distributed among joint and individual creditors. 1 Story Eq. Jur., sec. 675; 3 Kent's Com. 64; Story on Part., sec. 363; *Wilder* v. *Keeler*, 3 Paige, 167; *McCulloh* v. *Dashiell*, 1 Harris & Gill, 96.

If, however, the court say, there is no joint fund to which the joint creditors can resort, and no solvent partner from whom payment can be enforced, they should be allowed to participate equally with the private creditors, in the estate of the deceased partner.

How are the facts in this case? The partnership effects had been assigned by the firm to McIntyre "for the benefit of creditors," and are admitted to be insufficient to discharge the firm liabilities, and that the trust was not closed at the time of the suit, the assignee having in his hands the assets undisposed of. The case fails to show what the value of the assets were, nor does it show that the claim of Graves was included in the assignment. It will be a fair inference from what is agreed and proved in the case, and all such inferences the court has a right to draw, that as Graves was a creditor at the time of the

assignment, and the assignment made " for the benefit of creditors," generally, without any preferences, that Graves' debt was included within it. Now here is a joint fund though inadequate, to which Graves must first resort, and receive his *pro rata*, before he can thrust aside the separate creditors, and claim a share of the separate estate of the deceased partner. For the purpose, then, of a fair and equitable adjustment of the joint and separate claims, the assignee of the firm should be a party to the proceedings, and the burden lies upon the claimant against the joint estate to bring him in. The joint and separate debts are to be kept distinct, and the assets derived from the two estates are to be marshaled accordingly.

We do not think, with the appellee's counsel, that issuing an execution and having it returned *nulla bona* against the surviving partners, acquitted him of his whole duty in the premises. The joint fund being first liable for his debt, it was his duty to proceed against the assignee who had it, by bill in equity, and subject it to the payment of so much of the debt as his ratable proportion of it would discharge.

The County Court has no jurisdiction to entertain such a bill on such a case. What this court said in *Rodgers* v. *Moon*, in 19 Ill. 349, and in *Dixon* v. *Buel, Adm'r*, 21 ib. 204, was not intended to assert the doctrine contended for by appellee, that the County Court has a general equitable jurisdiction in cases where third parties are required to be brought in, and conflicting interests composed and settled. The conflicting claims of copartnership and separate creditors have long been a fruitful source of litigation, and it would be unreasonable to confide them to the control of that court. The cases referred to, show mere money demands, in which no party but those before the court had any interest, and no conflicting claim existed. The affairs of a copartnership have ever been considered peculiar subjects of chancery jurisdiction, where all matters pertaining to them can be thoroughly investigated, and complete justice done.

We think the County Court had not jurisdiction to investigate and allow this claim, and subject the separate property of the individual deceased partner to the payment of a joint debt, for which a fund existed for its payment, and the Circuit Court should so have decided.

The judgment of the Circuit Court is reversed.

*Judgment reversed.*